IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 9, 2000

## JAMES CARTER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P-19985      Bernie Weinman, Judge**

---

**No. W1999-00799-CCA-R3-PC - Filed October 23, 2000**

---

A Shelby County jury convicted the Defendant of first degree murder, and the trial court sentenced him to life imprisonment.  The Court of Criminal Appeals affirmed the conviction, and the Tennessee Supreme Court denied permission to appeal.  The Defendant filed a petition for post-conviction relief, which the trial court denied after an evidentiary hearing.  The Defendant appeals the denial of post-conviction relief and raises the following two issues: (1) whether the jury instruction on circumstantial evidence was proper; and (2) whether he received effective assistance of counsel at his trial.  Finding no error, we affirm.


**Tenn. R. App. 3 Appeal; Judgment of the Criminal Court Affirmed.**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Craig B. Flood, Memphis, Tennessee, for the appellant, James Carter.

Paul G. Summers, Attorney General and Reporter; Mark E. Davidson, Assistant Attorney General; William Gibbons, District Attorney General; and Rosemary Andrews, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**

The Shelby County Grand Jury returned an indictment charging the Defendant, James Carter, with first degree murder.  Loyce Lambert, a public defender, was appointed to represent the Defendant at trial.  When appointed in 1992, Lambert had been a licensed attorney since 1983 and had been with the Shelby County Public Defender's Office since 1985.  She had handled more than three hundred murder cases and was serving on the capital defense team at the time of the Defendant's first trial in 1993.

Because of multiple problems that arose during the first several days of the first trial, the trial court declared a mistrial. At the second trial in 1994, the Defendant was found guilty of first degree murder and was sentenced to life imprisonment. On appeal, this Court affirmed the conviction, and the supreme court denied permission to appeal.[1] The Defendant then filed a petition for post-conviction relief, which he subsequently amended. An evidentiary hearing was conducted, and the trial court denied the petition. The Defendant now appeals the trial court's denial of post-conviction relief.

The Defendant alleges in his post-conviction petition (1) that the jury instructions at the second trial concerning circumstantial evidence were improper; and (2) that Loyce Lambert was ineffective as his defense attorney, thus denying him his constitutional right to effective assistance of counsel.

## Jury Instruction

The Defendant argues that the jury instruction given at his second trial concerning circumstantial evidence was improper. Specifically, the Defendant maintains in his brief that the jury instruction failed to advise the jury to proceed with caution when weighing circumstantial evidence and that this error tainted the verdict. However, the Defendant presented no evidence at the post-conviction evidentiary hearing regarding the jury instruction on circumstantial evidence at the second trial.

The Post-Conviction Procedure Act of 1995 provides that a petition for post-conviction relief shall be dismissed if the facts alleged, taken as true, fail to show that the petitioner is entitled to relief or fail to show that the claims for relief have not been waived or previously determined. Tenn. Code Ann. § 40-30-206(f). A ground for post-conviction relief is waived if the petitioner fails to present the issue for determination in a proceeding in which the issue could have been presented. Id. § 40-30-206(g). The statutory exceptions to waiver are:

> (1) [t]he claim for relief is based upon a constitutional right not recognized as existing at the time of trial if either the federal or state constitution requires retroactive application of that right; or
> (2) [t]he failure to present the ground was the result of state action in violation of the federal or state constitution.

Id. § 40-30-206(g)(1), (2).

In this case, the Defendant previously appealed his first degree murder conviction to both this Court and the Tennessee Supreme Court. This Court affirmed the conviction, and the Tennessee Supreme Court denied permission to appeal. See State v. Carter, 970 S.W.2d 509, 516 (Tenn. Crim. App. 1997). Any issue pertaining to jury instructions clearly could have been raised on direct appeal. Based on the failure of the Defendant to raise this issue on direct appeal and the non-applicability of the statutory exceptions, the Defendant has waived this ground for relief. Even if this issue could

---

[1] See State v. James L. Carter, 970 S.W.2d 509 (Tenn. Crim. App. 1997).

be properly considered, no evidence was presented at the evidentiary hearing showing how the jury instruction violated the Defendant's right to a trial by jury. No copy of the jury instructions was introduced into evidence or made an exhibit, and no testimony concerning this issue was presented. We conclude that the trial court properly denied relief as to this issue.

## Ineffective Assistance of Counsel

The Defendant argues that he received ineffective assistance of counsel at trial. After carefully reviewing the petition, the amended petition, the detailed findings of fact and conclusions of law made by the trial court, and the briefs of the parties, we have categorized the Defendant's complaints against his trial attorney into eight allegations of ineffective assistance of counsel. Specifically, the Defendant alleges that his trial attorney, Loyce Lambert, provided ineffective assistance of counsel for the following reasons: (1) Lambert failed to request a second preliminary hearing after the audiotape of the preliminary hearing was lost; (2) Lambert failed to effectively cross-examine Gerald Speed by impeaching his credibility with a prior inconsistent statement about who was present during the crime; (3) Lambert failed to introduce evidence that the Defendant's fingerprints were not found at the crime scene; (4) Lambert failed to interview or call as witnesses certain law enforcement officers who investigated the crime scene; (5) Lambert failed to adequately review the evidence and discuss trial strategy with the Defendant; (6) Lambert failed to obtain an independent ballistics report; (7) Lambert failed to effectively cross-examine two juvenile witnesses; and (8) Lambert failed to move for a mistrial when the prosecutor, in his closing argument, stated that the Defendant was "shooting at kids."

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-203. The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Id. at § 40-30-210(f). A post-conviction court's findings of fact are afforded the weight of the jury and are conclusive on appeal unless the evidence in the record preponderates against those findings. Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of a particular case is de novo. Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose 523 S.W.2d 930, 936 (Tenn. 1975). This right to representation includes the right to "reasonably effective" assistance. Burns, 6 S.W.3d at 461. The Tennessee Supreme Court has held that the issue of ineffective assistance of counsel is a mixed question of law and fact, and, as such, is subject to de novo review. Id.

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation

fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that this performance prejudiced the defense, resulting in a failure to produce a reliable result. Id. at 687; Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). To satisfy the requirement of prejudice, a petitioner must show a reasonable probability that, but for counsel's unreasonable error, the fact finder would have had reasonable doubt regarding the petitioner's guilt. Strickland, 466 U.S. at 695. This reasonable probability must be "sufficient to undermine confidence in the outcome." Id. at 694; see also Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. Strickland, 466 U.S. at 690; State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462. Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276, 280 (Tenn. Crim. App. 1980).

With the foregoing legal principles as guidance, we must now analyze each of the Defendant's claims of alleged ineffective assistance by his trial counsel. First, it is not disputed that Lambert did not request a second preliminary hearing after the audiotape of the Defendant's preliminary hearing was lost, nor did she move to dismiss the indictment and request a remand of the case to General Sessions Court for a second preliminary hearing. However, the Defendant did not present clear and convincing evidence that Lambert's conduct with regard to this issue fell outside the range of reasonable professional assistance that is constitutionally required. Additionally, the Defendant failed to prove how he was prejudiced by Lambert's representation concerning this issue. As this Court stated on the direct appeal, there is nothing in the record which indicates that the Defendant was prejudiced by the lack of an electronic recording of his preliminary hearing. Lambert was able to use the prior testimony of two crucial juvenile witnesses from the first trial to cross-examine them at the second trial and did so "quite ably." See Carter 970 S.W.2d at 511.

The Defendant states in his brief that Lambert's failure to obtain a second preliminary hearing was prejudicial because Lambert did not represent the Defendant at his first (and only) preliminary hearing, and therefore, she did not have "the opportunity to observe the witnesses and cross-examine each for herself." Additionally, the Defendant argues that without a second preliminary hearing, Lambert did not have the opportunity to observe and cross-examine Gerald Speed, a witness who testified at the Defendant's second jury trial that he saw the Defendant at the crime scene at the time of the killing. Speed's testimony also helped link the Defendant to the gun used in the killing. Speed did not testify at the preliminary hearing and apparently came to the prosecution with evidence against the Defendant about a day or two prior to the Defendant's first jury trial, which began March 1, 1993. Multiple problems arose early in that jury trial, causing the trial judge to declare a mistrial sua sponte. This occurred prior to any testimony from Speed.

Between the mistrial in March, 1993 and the second jury trial in November, 1994, Lambert had time to prepare for her cross-examination of Speed. She testified that the statements Speed gave to her investigators were consistent with what Speed told her. Had a second preliminary hearing been conducted, Speed may or may not have testified. The murder charge against the Defendant went to the Shelby County Grand Jury after a preliminary hearing at which Speed did not testify.

We conclude that the Defendant has not shown that Lambert's failure to obtain a second preliminary hearing for the Defendant was conduct falling outside the range of competence demanded of attorneys in criminal cases. Perhaps more importantly, we conclude that the Defendant has not shown that his lack of a second preliminary hearing resulted in any prejudice sufficient to undermine confidence in the outcome of the Defendant's second jury trial.

Second, the Defendant argues that Lambert failed to effectively cross-examine Speed at the second jury trial because she did not impeach him with a prior inconsistent statement. According to the Defendant, when the State raised the issue of Speed being called as a recently discovered witness at the first jury trial, the attorney for the State told the trial court that the State expected Speed to testify that he saw the Defendant at the time of the murder entering the victim's apartment along with another individual, Michael Carrick. Because a mistrial occurred, Speed never testified at the Defendant's first jury trial. When Speed testified at the Defendant's second jury trial, he apparently did not testify that Michael Carrick was with the Defendant at the time of the crime.

It is important to note that what the Defendant claims was a prior inconsistent statement by Speed was actually a representation made by an attorney for the State as to what the State expected Speed's testimony to be. The Defendant did not present any evidence at his post-conviction hearing that Speed ever actually made any statement that was inconsistent with his trial testimony. Lambert testified that the statements Speed gave her investigators were consistent with what Speed said to her. Lambert believed that a strategy of pursuing the Carrick issue during her cross-examination of Speed could "open the door" to enhancing the credibility of other state witnesses. We conclude that the Defendant has not proved that Lambert's cross-examination of Speed was ineffective, and thus the Defendant was not prejudiced by ineffective representation on this issue.

Third, the Defendant argues that Lambert was ineffective because she failed to introduce evidence that his fingerprints were not found at the crime scene. Lambert testified that because the victim and the Defendant were "girlfriend and boyfriend" and the crime scene was the victim's apartment, it would be logical for the jury to conclude that the Defendant's fingerprints would be at the crime scene. Lambert believed that since the Defendant's fingerprints would logically be at the victim's apartment, it would be bad strategy to point out to the jury that the Defendant's fingerprints were not at the crime scene. Lambert correctly pointed out that such a strategy could cause the jury to conclude that "if his fingerprints weren't there, somebody wiped them and cleaned up where they would not be found." We conclude that Lambert was not ineffective merely because a different strategy might have produced a different result. See Williams, 599 S.W.2d at 280.

Fourth, the Defendant contends that Lambert was ineffective because she failed to call any crime scene officers as witnesses at the Defendant's second jury trial. The Defendant argues that the testimony of these crime scene officers would have been inconsistent in some respects with the testimony of other State witnesses. The Defendant claims that the crime scene officers would have testified that their investigation revealed that one shot was fired, which contradicts the testimony of several witnesses who testified that two or more shots were heard. The Defendant also claims that the testimony of the crime scene officers would have supported a theory that the victim was killed during a burglary or robbery, which is inconsistent with the State's theory that the Defendant killed the victim during an argument.

Lambert testified that her investigation of the crime scene evidence did not indicate that only one shot was fired or that the killing likely occurred during a burglary. She reviewed photographs of the crime scene (the victim's apartment) which revealed an "unkept" and "dirty" apartment, but not an apartment that looked "ransacked," as might be the case had a burglary or robbery occurred. Lambert's investigation revealed that more than one shell casing were found at the scene.

At his post-conviction hearing, the Defendant failed to introduce the testimony of any crime scene officers or evidence of the crime scene report. Therefore, we are unable to effectively determine how the Defendant may have been prejudiced by Lambert's conduct concerning this issue. From Lambert's testimony, which was obviously accredited by the trial court, we conclude that her representation of the Defendant concerning this issue was well within the range of competence required.

Fifth, the Defendant makes a general allegation that Lambert failed to adequately review the evidence and discuss trial strategy with him. This assertion by the Defendant is without merit. Lambert's testimony and the Defendant's testimony at the post-conviction hearing support the trial court's finding that "the case was thoroughly investigated and [that] defense counsel was properly prepared for trial."

Sixth, the Defendant contends that Lambert was ineffective because she failed to obtain an independent ballistics test of the murder weapon. Lambert testified that a Tennessee Bureau of Investigations (TBI) ballistics test matched the gun to the projectile. She had reason to believe that an additional ballistics test would have simply corroborated the TBI ballistics test. There was no proof presented at the post-conviction hearing that a second ballistics test would have benefited the Defendant. Under these circumstances, we conclude that Lambert was not ineffective in her representation of the Defendant on this issue.

Seventh, the Defendant claims that Lambert ineffectively cross-examined two juvenile witnesses, Edward Love and Marcadies Dishman. The Defendant presented no evidence during his post-conviction hearing concerning the alleged defects in Lambert's performance, except his own testimony that Lambert failed to attack Dishman's credibility by using information from the "crime scene report" that was allegedly inconsistent with Dishman's testimony. Lambert testified that her pre-trial investigation did not reveal any information that could be used to impeach the testimony

of either child.  She also was mindful that aggressively cross-examining a young witness could easily evoke the jury's sympathy for the witness and the jury's hostility toward counsel and her client.  This issue involves the trial strategy chosen by Lambert, and the Defendant failed to prove that Lambert's representation was ineffective.

Finally, the Defendant argues that Lambert was ineffective because she failed to request a mistrial when the prosecuting attorney allegedly made inflammatory comments about the Defendant during closing argument.  The Defendant argues in his brief that the prosecutor made remarks about the Defendant "shooting at children" during his closing argument.  However, the Defendant failed to prove by clear and convincing evidence: (1) the exact nature of the comment or remark that was made; (2) that Lambert failed to object to the remark; (3) that the trial court failed to give a curative instruction if, in fact, an objection was made and sustained; and (4) that there was not a factual basis in the evidence for the remark.  The Defendant failed to prove by clear and convincing evidence that Lambert's representation on this issue was ineffective.

After a careful review of the record, we conclude that the evidence does not preponderate against the findings of the trial court.  Also, after a de novo review of the trial court's application of the law to the facts, we conclude that the trial court correctly applied the appropriate law to the facts of this case.

Accordingly, we AFFIRM the judgment of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE

-7-